**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SANDRA FAYE COLEMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:16-CV-1546-SNLJ** |
| | ) | |
| **NANCY A. BERRYHILL,**[1] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Sandra

Coleman's applications for Disability Insurance Benefits under Title II of the Social

Security Act and Supplemental Security Income under Title XVI of the Social Security

Act. Coleman now seeks judicial review (#15). The Commissioner opposes the motion

(#20), and the issue is ripe. The Commissioner's decision is supported by substantial

evidence on the record as a whole and is affirmed.

## I.       Procedural History

Coleman's applications were denied at the initial determination levels. She then

appeared before an Administrative Law Judge ("ALJ"). The ALJ found that Coleman is

not disabled because she can perform work that exists in substantial numbers in the

national economy. Coleman now appeals that decision.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

## II.     Disability Determination—Five Steps

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled if he is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  *Id.* § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential evaluation process when evaluating whether a claimant has a disability.  20 C.F.R. § 416.920; *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner considers a claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 416.920(c), 416.921(a).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the claimant's ability to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. § 416.945(a)(1). If a claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden to show that the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. If the claimant cannot make an

adjustment to other work, the Commissioner finds the claimant disabled. 20 C.F.R. §

416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the

Commissioner, the burden of persuasion to prove disability remains on the claimant.

*Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. The ALJ's Decision

At Step One, the ALJ found that Coleman met the insured status requirements

through December 31, 2012, and had not engaged in substantial gainful activity since

May 15, 2011. At Step Two, the ALJ found that Coleman suffers from three severe

physical impairments. The ALJ also found that Coleman's mental impairments

(stemming from depression and substance abuse) are not severe. At Step Three, the ALJ

concluded that Coleman does not have an impairment that meets or equals one of the

presumptively disabling impairments listed in the regulations.

Next, the ALJ assessed Coleman's RFC. The ALJ found that Coleman

> has the residual functional capacity to perform light work as defined in 20
> CFR 404.1567(b) and 416.967(b), in that the claimant can lift and carry up
> to twenty pounds occasionally and lift or carry up to ten pounds frequently;
> stand and/or walk for two hours out of an eight-hour workday; and sit for
> six hours out of an eight-hour workday, except the claimant's standing and
> walking would be limited to no more than 15-20 minutes at a time, but the
> claimant would remain at the workstation and on task. The claimant can
> occasionally use of foot controls on the left, climb ramps and stairs,
> balance, stoop, kneel, couch and crawl, but should never climb ladders,
> ropes or scaffolds. The claimant cannot perform work at unprotected
> heights or work involving moving mechanical parts, and can occasionally
> work in an environment with vibration.

(Tr. 19). At Step Four, the ALJ relied on vocational expert ("VE") testimony and found

that Coleman cannot perform any past relevant work. At Step Five, the ALJ analyzed

whether Coleman can successfully adjust to other work. The ALJ noted that, if Coleman had the RFC to perform the full range of light work (if her RFC matched perfectly the light work Grid rule), the Grids would direct a finding of not disabled. But additional limitations impede Coleman's ability to perform all or substantially all of the light work requirements. Thus, the ALJ relied on VE testimony to determine the extent to which these limitations erode Coleman's occupational base to perform light work. The VE testified that Coleman is able to perform work as a mail clerk, marker II, and router I, even after considering all of the limitations in Coleman's RFC. The ALJ then found that these jobs exist in significant numbers in the national economy and concluded that Coleman is not disabled.

## IV.    Standard of Review

The Court must affirm the Commissioner's decision if the decision is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative

decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992).

## V.     Discussion

Coleman claims the ALJ committed three errors.  First, she claims the ALJ really found that Coleman has the RFC to perform sedentary work; thus, the Medical Vocational Guidelines ("the Grids") require the ALJ to find Coleman disabled.  Second, she argues the ALJ violated the Program Operations Manual System ("POMS"), the primary source of information Agency employees use when processing claims for Social Security benefits.  Third, she claims the ALJ erred in finding her mental impairments not severe at Step Two.  The Court takes each in turn.

### A.     Despite Internal Inconsistencies, Coleman's RFC Still Fell Somewhere in the Middle of Light and Sedentary Work, and the ALJ's Decision to Call the VE Was Proper and Is Supported by Substantial Evidence

Coleman correctly points out an internal inconsistency in the ALJ's RFC finding. She claims this inconsistency shows that she has the RFC to perform only sedentary, not light, work.  And given her RFC to perform sedentary work, the Grids require the ALJ to find her disabled.  The Court will first explain how ALJs use the Grids before noting the differences between light and sedentary work.

### 1.     Using the Grids at Step Five

If the ALJ holds at Step Four that a claimant cannot perform past relevant work, the burden to show that the claimant maintains the RFC to perform a significant number of jobs within the national economy shifts to the Commissioner at Step Five. *Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000).  The Commissioner may meet this

burden in one of two ways: by eliciting testimony from a VE, or, "[i]f [a claimant's] impairments are exertional (affecting the ability to perform physical labor), . . . by referring to the medical-vocational guidelines or 'grids,' which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment." *Stone v. Colvin*, No. 4:14-CV-494-ACL, 2015 WL 1433469, at *8 (E.D. Mo. Mar. 27, 2015) (first and second alterations in original) (*quoting Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)).

The Grids provide the types and numbers of jobs that exist in the national economy where a claimant's RFC corresponds to the job requirements that a particular rule identifies. *Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983). Thus, the ALJ need not rely on VE testimony when the Grids apply. *Id.* The Grids apply and direct a conclusion—disabled or not disabled—where the ALJ's findings of fact relating to the claimant's vocational factors and RFC match all of the criteria of a particular rule (for sedentary work, light work, etc.) on one of the Grids. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a). When the Grids and the findings of fact do not match perfectly, the Grids do not direct a conclusion, and the ALJ uses the Grids as a framework. SSR 83-12, 1983 WL 31253 (Jan. 1, 1983).

When using the Grids as a framework (that is, where an individual's exertional RFC does not match perfectly with the definition of any one of the ranges of work that corresponds to a Grid rule), the claimant's occupational base—the number of occupations the individual is capable of performing given his or her RFC, SSR 83-10, 1983 WL

31251, at *6 (Jan. 1, 1983)—is affected. SSR 83-12, 1983 WL 31253, at *2. The ALJ "will consider the extent of any erosion of the occupational base and [assess] its significance." *Id.*

SSR 83-12 guides ALJs who are considering the erosion of a claimant's occupational base when the claimant's exertional capacity falls between two Grid rules that direct different conclusions, which is the situation in this case. SSR 83-12 explains three possible situations relating to erosion.

First, "[a]n exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of 'Not disabled.'" SSR 83-12, 1983 WL 31253, at *2.

Second, "if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of 'Disabled.'" *Id.* But the ALJ is not *required* to apply the Grids and find the claimant disabled in this situation. *See Stone*, 2015 WL 1433469, at *11. The language is permissive, and the ALJ should still rely on VE testimony to determine the occupational base erosion, as described in the third situation.

Third, when "the individual's exertional limitations are somewhere 'in the middle' . . . of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, V[E] assistance is advisable for these types of cases." SSR 83-12, 1983 WL 31253, at *3.

Coleman claims that, given the internal inconsistency, her RFC is really an RFC for sedentary work, not light work. This is crucial, Coleman argues, because the Grid rule that corresponds to sedentary work directs a conclusion of disabled in her case. The Court must now consider the definitions of light and sedentary work to determine whether the ALJ correctly used the Grids as a framework and correctly elicited VE testimony.

### 2. Light v. Sedentary Work; Frequently v. Occasionally

Agency regulations distinguish between light and sedentary work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*Id.* §§ 404.1567(a), 416.967(a). An Agency policy statement defines frequent and occasionally:

> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting

requirement for the majority of light jobs can be accomplished with
occasional, rather than frequent, stooping.

SSR 83-10, 1983 WL 31251, at *6.

"Occasionally" means occurring from very little up to one-third of the time.
Since being on one's feet is required "occasionally" at the sedentary level
of exertion, periods of standing or walking should generally total no more
than about 2 hours of an 8-hour workday, and sitting should generally total
approximately 6 hours of an 8-hour workday.

*Id.* at *5. As Coleman points out, her RFC is internally inconsistent. Per Agency

guidance, Coleman cannot lift or carry 10 pounds frequently (2.67 hours to 5.33 hours in

an 8-hour workday) because she is limited to no more than 2 hours of walking or standing

in an 8-hour workday. And the Agency policy statement notes that lifting or carrying

requires being on one's feet. *Id.* at *6.

So the ALJ erred in Coleman's RFC finding, but not all errors require remand.

*See Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006). Only prejudicial ones do.

*Id.* The Court rejects Coleman's argument that her RFC is actually an RFC for sedentary

work, simply because she is limited to no more than two hours of standing or walking.

*See Jones v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-16-936, 2017 WL 627383, at *2

(D. Md. Feb. 15, 2017) (citing cases). As this Court understands the issue, the ALJ's

error was harmless if there is substantial evidence that Coleman's RFC was somewhere

in the middle of light and sedentary work. That puts Coleman's RFC between rules that

direct different conclusions. In that case, Agency guidance instructs the ALJ to rely on

VE testimony when determining the occupational base erosion. SSR 83-12, 1983 WL

31253, at *3; *see also Stone*, 2015 WL 1433469, at *11.

### 3. The ALJ Correctly Used the Grids as a Framework and Correctly Elicited VE Testimony

The Court will analyze Coleman's entire RFC to determine whether there is substantial evidence that Coleman's RFC was somewhere in the middle of light and sedentary work.

First, Coleman can lift and carry up to 20 pounds occasionally (very little up to 2.67 hours in an 8-hour workday). This is consistent with light work. 20 C.F.R. §§ 404.1567(b), 416.967(b). Second, as explained above, Coleman cannot carry 10 pounds *frequently* (2.67 hours to 5.33 hours in an 8-hour workday) because she cannot walk or stand more than 2 hours in an 8-hour workday. And although lifting requires being on one's feet, "[t]he lifting requirement for the majority of light jobs can be accomplished with occasional . . . stooping." SSR 83-10, 1983 WL 31251, at *6. Coleman can occasionally stoop, which means she can perform at least a reduced range of the lifting that light work requires. Third, Coleman's 2-hour standing or walking restriction is consistent with sedentary work. 20 C.F.R. §§ 404.1567(a), 416.967(a). Fourth, Coleman can sit for 6 hours in an 8-hour workday and occasionally use foot controls on the left. Light work can involve "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). This is also consistent with at least a reduced range of light work.

The primary difference between light and sedentary work is that light work requires a good deal of walking or standing. SSR 83-10, 1983 WL 31251, at *5. While Coleman cannot perform a full range (substantially all of the light work activities) of light

work, she clearly can perform more than just sedentary work.  Coleman does not argue

that she is unable to perform those parts of her RFC that are consistent with light work.

Thus, there is substantial evidence that Coleman's RFC fell somewhere in the middle of

light and sedentary work.  The ALJ properly used the Grids as a framework and properly

relied on VE testimony to determine the erosion of Coleman's occupational base for light

work.  SSR 83-12, 1983 WL 31253, at *3; *see also Stone*, 2015 WL 1433469, at *10–11

(concluding, based on SSR 83-12, that an ALJ still should elicit VE testimony when a

claimant's RFC falls between light and sedentary work, *even if* the occupational base for

light work is significantly reduced).

Coleman cites several cases where district courts remanded after an ALJ found a

claimant capable of performing a reduced range of light work when the claimant could

not stand or walk more than 2 hours in an 8-hour workday.  *See, e.g.*, *Campbell v. Astrue*,

No. 04-5356, 2010 WL 4689521, at *5 (E.D. Pa. 2010) (leading case); *Ford v. Colvin*,

No. 1:14-cv-01046-RGA, 2015 WL 4608136, at *7–8 (D. Del. July 31, 2015); *Bisceglia

v. Colvin*, No. 3:15-cv-83-JRS, 2016 WL 1248860, at *7–8 (E.D. Va. Mar. 25, 2016).

Other cases have not remanded in that situation.  *See Jones v. Comm'r, Soc. Sec. Admin.*,

No. CV SAG-16-936, 2017 WL 627383, at *2 (D. Md. Feb. 15, 2017); *Freeman v.

Colvin*, No. 3:15-CV-216-HBG, 2016 WL 697140, at *4 (E.D. Tenn. Feb. 19, 2016);

*Bester v. Berryhill*, No. CV TMD 15-3262, 2017 WL 1207539, at *8 (D. Md. Mar. 31,

2017); *Hall v. Colvin*, No. CV 16-447-RGA-MPT, 2017 WL 3189030, at *13 (D. Del.

July 27, 2017), *report and recommendation adopted sub nom. Hall v. Berryhill*, No. CV

16-447-RGA, 2017 WL 4222628 (D. Del. Sept. 22, 2017).  None of these cases are

binding on this Court, and none are from this district.  In fact, this seems to be the first

case in this district to consider an RFC that contradicts itself.  The cases Coleman cites

are not persuasive under these facts, where there is substantial evidence that Coleman's

RFC fell somewhere in the middle of light and sedentary work.  To the extent that these

cases still require remand—despite substantial evidence that the RFC falls somewhere in

the middle of light and sedentary work and VE testimony—they are inconsistent with this

Court's decision in *Stone v. Colvin*, 2015 WL 1433469, at *10–11.

Next, Coleman argues that the VE's testimony is unreliable because it conflicts

with Agency policy.  And VE testimony cannot be relied on when it conflicts with

Agency policy.  The VE concluded that Coleman is capable of performing three

occupations that the *Dictionary of Occupational Titles* ("DOT") classifies as "light

work."  But the jobs are really sedentary, Coleman argues, when performed according to

her RFC.  Specifically, Coleman argues that light work lifting and carrying requirements

require her to stand or walk for more than two hours, which she cannot do.  "The

[Agency] guidelines operate as the full range of work, and when an individual can

perform variations of those guidelines, they are not inconsistent with the VE testimony."

*Hall*, 2017 WL 3189030, at *13.  As explained above, the ALJ found that Coleman can

perform a reduced range of light work.  Thus, the VE's testimony does not conflict with

Agency policy, and this argument fails.

In sum, the ALJ was not required to apply the Grid rule that corresponds to

sedentary work just because Coleman is limited to no more than 2 hours of standing or

walking in an 8-hour workday.  Coleman is correct that her RFC is internally consistent.

But there is substantial evidence that her RFC fell somewhere in the middle of light and sedentary work. Thus, the error was harmless, and the ALJ properly relied on VE testimony to determine the erosion of Coleman's occupational base for light work. And the VE's testimony did not conflict with Agency policy. Coleman does not argue that she cannot perform the jobs the VE identified. Coleman also does not argue that the jobs the VE identified do not exist in significant numbers in the national economy. Thus, the ALJ's error was harmless, the VE's testimony provided substantial evidence that Coleman is not disabled, and Coleman's first argument fails.

### B.     The ALJ Did Not Violate the POMS

Coleman argues that the ALJ violated POMS DI 25025.015(D) in applying the Grid rule that corresponds to light work instead of applying the rule that corresponds to sedentary work.

### 1.     The Legal Status of the POMS

Plaintiff claims that the POMS is binding on all ALJs. She relies on an Agency policy interpretation that says the Agency requires all adjudicators to follow agency policy, including the POMS. *See* SSR 13-2p, 2013 WL 621536, at *15 (Feb. 20, 2013). Without citing any legal authority, Coleman argues that this violation requires remand.

The Commissioner points out that the POMS does not carry the force of law, *Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000), and argues that the ALJ did comply with POMS DI 25025.015(D).

Both arguments miss how deference applies to the POMS. The POMS is a policy and procedure manual that Agency employees use when evaluating benefit eligibility.

*Draper v. Colvin*, 779 F.3d 556, 558 (8th Cir. 2015). On the one hand, POMS DI 25025.015(D) does not carry the force of law. On the other hand, it is an Agency interpretation of a regulation, 20 C.F.R. pt. 404, subpt. P, app. 2. "As an interpretation of a regulation promulgated by the Commissioner, the POMS control unless they are inconsistent with the regulation or plainly erroneous." *Rodysill v. Colvin*, 745 F.3d 947, 950 (8th Cir. 2014).

The regulation explains that, "[w]here any one of the findings of fact does not coincide with the corresponding criterion of a [Grid] rule," the Grid rule does not direct a conclusion of disabled or not disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00. In that case, the Grids are used as a framework. SSR 83-12, 1983 WL 31253. POMS DI 25025.015(D), which expands on using a rule as a framework when the exertional capacity falls between two Grid rules, is thus consistent with the regulation it interprets. Courts that reject POMS-based arguments simply because POMS does not carry the force of law overlook the deference issue. *See, e.g.*, *Martinez v. Colvin*, No. 6:14-CV-01703-MC, 2016 WL 270911, at *5 (D. Or. Jan. 20, 2016); *Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785, 786–87 (11th Cir. 2011) (per curiam); *Cameron v. Colvin*, No. 1:15-CV-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

## 2. The ALJ Complied with POMS DI 25025.015(D)

Again, SSR 83-12 expands on using the Grids as a framework when the claimant's exertional capacity falls between two Grid rules. "While [SSR 83-12 and POMS DI 25025.015(D) are] similar, SSR 83-12 is more detailed and more comprehensive than POMS DI 25025.015. Both set out possible scenarios when a claimant's exertional

capacity falls between two rules, including the scenario when the two rules direct different conclusions-one disabled and one not disabled." *Sankhar v. Colvin*, No. 03:14-CV-01644-HZ, 2015 WL 5664285, at \*6 (D. Or. Sept. 21, 2015).

As explained above, SSR 83-12 addresses three different situations where the claimant's exertional capacity falls between two Grid rules that direct different conclusions: (1) an exertional capacity that's only slightly reduced could indicate an occupational base that satisfies a finding of not disabled; (2) an exertional capacity that's significantly reduced could show that the claimant has an occupational base for the lower rule, justifying a finding of disabled; and (3) an exertional capacity that's somewhere in the middle of the two Grid rules, where it's more difficult to determine the remaining occupational base, and VE testimony is advisable. SSR 83-12, 1983 WL 31253, at \*2–3.

POMS DI 25025.015(D) tracks the first two situations in SSR 83-12; it does not address the third, "middle," category that 83-12 explains. POMS DI 25025.015 provides:

> Determining whether a claimant is disabled is a more difficult judgment when his or her exertional capacity falls in the middle of two rules and the rules direct opposite conclusions. In this situation apply the:
>
> - higher-numbered rule and find the claimant not disabled if you conclude the claimant has a slightly reduced capacity for the higher level of exertion; or
>
> - lower-numbered rule and find the claimant disabled if you conclude the claimant has a significantly reduced capacity for the higher level of exertion.

POMS DI 25025.015(D). Because some of Coleman's limitations are consistent with light work, while others are consistent with sedentary work, it is not readily apparent that her capacity for light work is "slightly" or "significantly" reduced. *See Sankhar*, 2015

WL 5664285, at *7. This places Coleman in the "middle" category addressed in SSR 83-12. "The POMS does not provide guidance to the ALJ in that situation." *Id.* SSR 83-12 required the ALJ to determine how much Coleman's limitations eroded her occupational base for light work. If this were an easy case, the ALJ might have been able to make that call. *Anders v. Berryhill*, 688 F. App'x 514, 521 (10th Cir. 2017). But it was not. When the amount of erosion is unclear—and the limitations are "somewhere in the middle"— the ALJ needs to consult a VE. As the ALJ explained, he called the VE to determine the erosion of Coleman's occupational base for light work. Thus, the ALJ found the amount of erosion unclear and followed SSR 83-12.

First, Coleman argues that her capacity for light work must have been significantly reduced based on her walking and standing limitation. Thus, pursuant to POMS DI 25025.015(D), the ALJ should have applied the Grid rule that corresponds to sedentary work and found her disabled. As explained above, Coleman's limitations placed her somewhere in the middle of light and sedentary work, and the ALJ's finding is supported by substantial evidence. So it was not clear if her capacity for light work is slightly or significantly reduced before the ALJ called the VE. This argument fails.

Second, Coleman argues that the ALJ erred by failing to explain why he applied the Grid rule that corresponds to light work instead of the rule that corresponds to sedentary work. POMS DI 25025.015(D) provides: "**IMPORTANT**: Always explain the basis of your conclusions." It is clear the ALJ did not conclude that Coleman's capacity for light work was either slightly or significantly reduced. That's why he used the Grids as a framework, rather than applying the Grids and finding Coleman disabled or not

disabled. That's also why he called the VE—to determine the erosion of Coleman's occupational base for light work. It necessarily follows that Coleman's capacity for light work is not significantly reduced since there are jobs that exist in significant numbers in the national economy—jobs classified as light in the DOT—that Coleman can perform. Thus, no other explanation was necessary. The ALJ complied with POMS DI 25025.015(D).

Coleman still does not argue that she is unable to perform the jobs the VE listed or that these jobs do not exist in significant numbers in the national economy. Thus, the VE's testimony provides substantial evidence that Coleman is not disabled.

### C. The ALJ's Finding That Coleman's Mental Impairments Are Not Severe Is Supported by Substantial Evidence

Coleman alleged disability based on mental impairments stemming from depression and substance abuse. At Step Two—where the ALJ looks to see whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities—the ALJ found that Coleman's mental impairments are not severe. Coleman claims the ALJ erred in finding her mental impairments not severe and in failing to include those mental impairments in her RFC.

Severity at Step Two is a *de minimus* standard; it is satisfied if the claimant shows the impairment has more than a slight or minimal effect on his or her ability to perform basic work activities. SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985); *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

First, the ALJ analyzed Coleman's argument that she is disabled because of her depression. Dr. Curtis Boeser diagnosed Coleman with major depressive disorder (recurrent with psychotic features) and schizoaffective disorder back in 2013. Boeser found that Coleman's Global Assessment of Functioning Score ("GAF")—which practitioners use when making treatment decisions—was 53. Generally, this score is consistent with moderate symptoms or difficulty in social, occupational, or school functioning. But the ALJ found that Coleman's records do not support moderate symptoms.[2] The ALJ gave little weight to Boeser's opinion because Boeser examined Coleman just one time, and Boeser's observations were not consistent with the rest of the record. In fact, medical records from the relevant period (and after her diagnosis) show that Coleman did not feel depressed and did not need treatment. She has never taken any medication for depression. Thus, the ALJ found that Coleman's depression only minimally limits her ability to perform basic mental work activities and found that it was not severe.

Second, the ALJ considered Coleman's argument that she is disabled due to substance abuse. The ALJ noted that Coleman's medical records show that her substance abuse is not recurring. And any impairment that Coleman's alcohol abuse caused does not contribute to her medically determinable impairments. Thus, the ALJ found that Coleman's substance abuse was not severe.

---

[2] Also, the most-recent version of the Diagnostic and Statistical Manual of Mental Disorders has dropped the GAF score because of its "conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013). And nothing requires an ALJ to decide the severity of a claimant's mental severity based solely on a GAF score.

In making this not-severe finding at Step Two, the ALJ considered the four broad functional areas for evaluating mental disorders set out in the regulations. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. Even though Coleman ignored this mental-limitation argument in her reply brief, the Court still must determine whether the ALJ's finding for each functional area is supported by substantial evidence.

First, the ALJ found that Coleman has only mild limitations to her activities of daily living. The ALJ noted that Coleman listens to music, cooks, and exercises some. In 2013, Terry Dunn assessed Coleman's mental status on behalf of the Disability Determination Service. Dunn also concluded that Coleman has only mild limitations to her activities of daily living. The ALJ gave great weight to Dunn's opinion. This finding is supported by substantial evidence.

Second, the ALJ found that Coleman has only mild limitations in social functioning. Although Coleman was diagnosed with depression, medical records after this diagnosis indicate that Coleman does not have depression. The ALJ again gave great weight to Dunn's conclusion that Coleman has only mild limitations in social functioning. This finding is supported by substantial evidence.

Third, the ALJ found that Coleman has only mild limitations to her concentration, persistence, or pace. For this category, the ALJ gave little weight to Dunn's conclusion that Coleman has moderate limitations. The ALJ explained that Coleman (1) completed high school and one year of college, (2) spends her days reading, watching television, listening to music, doing some exercise, and cooking at times, (3) has a history of performing unskilled and semi-skilled work, and (4) has no record of deficits in this area.

Coleman wrote in her Claimant Function Report that her mental anguish clogs her concentration. (Tr. 298). The Claimant Function Report lists different items that a claimant's condition might affect. This list explicitly includes concentration, understanding, and following instructions. Yet Coleman did not circle any one of those items. In her hearing before the ALJ, Coleman did not complain of problems with her concentration, persistence, or pace. And nothing in any medical record—except Boeser's evaluation, which the ALJ was not obligated to rely on—shows that Coleman has limitations in her concentration, persistence, or pace. Thus, the ALJ's finding is supported by substantial evidence.

Fourth, the ALJ found that Coleman has not experienced extended episodes of decompensation. The ALJ agreed with Dunn that Coleman would not likely have episodes of decompensation in the future. This finding is supported by substantial evidence.

Because Coleman's medically determinable mental impairments cause no more than mild limitations in the first three functional areas, and because Coleman has not experienced extended periods of decompensation, the ALJ found that Coleman's mental impairments are not severe. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

For the reasons explained above, the ALJ's finding that Coleman's mental impairments only minimally limit Coleman's ability to perform basic mental work activities is supported by substantial evidence on the record as a whole.

## VI.  Conclusion

Because the ALJ's decision is supported by substantial evidence on the record as a whole, this Court must affirm the decision, even if there is evidence that supports the opposite conclusion. *See Weikert*, 977 F.2d at 1252.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is affirmed.


So ordered this  15th  day of December 2017.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE